# MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC

## NURSE PRACTITIONER EMPLOYMENT AGREEMENT

THIS NURSE PRACTITIONER EMPLOYMENT AGREEMENT (the "Agreement") is made and entered into this ___1___ day of ___June___, 2012, by and between MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC, a professional limited liability company organized and existing under the laws of the Commonwealth of Kentucky ("MESA") and Lori Wagner-Bromagen, APRN ("Nurse Practitioner"). (Individually, MESA or Nurse Practitioner may be referred to as "Party"; collectively, MESA and Nurse Practitioner may be referred to as "Parties".)

### RECITALS

MESA provides professional health care services in accordance with certain professional services agreements between MESA and various hospitals, health care facilities or other entities and employs nurse practitioners and other health care workers who are duly licensed, certified and otherwise qualified to provide such services by the jurisdictions in which these entities are located. (Such professional services agreements may be referred to as "MESA Contracts".)

Nurse Practitioner is registered and authorized to practice as a nurse practitioner in the jurisdictions identified in Appendix A, attached hereto and incorporated herein.

Nurse Practitioner, understanding and accepting the terms and conditions of his or her employment as set forth in this Agreement, including any and all appendices attached hereto, desires to practice as a nurse practitioner employee of MESA. Nurse Practitioner acknowledges that his or her acceptance of this Agreement is a prior condition of his or her continued engagement with MESA.

NOW THEREFORE, in consideration of the premises and the mutual promises set forth below, the receipt and sufficiency of which are hereby acknowledged by both Parties, IT IS AGREED AS FOLLOWS:

### SECTION 1
### EMPLOYMENT

1.1    Term. The initial term of Nurse Practitioner's employment under this Agreement shall begin on June 1, 2012 ("Effective Date") and shall continue for twelve (12) months from such Effective Date, unless sooner terminated in accordance with the terms of this Agreement. Thereafter, this Agreement shall be automatically renewed for additional terms of one (1) year unless terminated in accordance with the Section 5 of this Agreement.

### SECTION 2
### COMPENSATION

For services rendered by Nurse Practitioner under this Agreement, MESA will pay Nurse Practitioner at the rate(s) stated in Appendix A.



## SECTION 3
## DUTIES AND RESPONSIBILITIES

3.1    <u>Duties.</u> Nurse Practitioner is employed to practice as a nurse practitioner employee of MESA in the hospitals, health care facilities or other entities as identified in Appendix A and for the minimum number of hours per month as specified in Appendix A. Subject to applicable federal, state or local laws, regulations, rules or policies, professional canons or rules of ethics, Nurse Practitioner agrees that:

(a) Nurse Practitioner will devote his or her best efforts, knowledge and skill to provide healthcare services under the supervision of a qualified physician, in a manner commensurate with the accepted standard of care within the community in which Nurse Practitioner is employed by MESA, with such duties as are customarily associated with such services and/or which may be communicated to Nurse Practitioner by the supervising physician, by MESA or by the hospital, health care facility or other entity at which Nurse Practitioner is employed by MESA .

(b) Nurse Practitioner will provide healthcare services in accordance with and subject to, all applicable federal, state and local laws, regulations and rules.

(c) Nurse Practitioner shall obtain and/or maintain such licenses, credentials, staff privileges, permits, registrations, certifications and continuing education requirements as necessary to provide services under this Agreement at the hospitals, health care facilities or other entities at which Nurse Practitioner is employed by MESA, or as may be reasonably requested by MESA from time to time, including, without limitation, Basic Life Support, Advanced Cardiac Life Support, Advanced Trauma Life Support, Pediatric Advanced Life Support and the credentials, certifications, etc. identified in Appendix A.

(d) All work performed by Nurse Practitioner shall be subject to review by MESA in accordance with quality assurance programs that may be established from time to time by MESA in its discretion. Nurse Practitioner agrees to comply with the recommendations and requirements of any such quality assurance program.

(e) Nurse Practitioner agrees to abide by work and scheduling policies, as may be established and modified by MESA from time to time.

(f) Nurse Practitioner shall adhere faithfully to all applicable professional ethics and customs, and shall avoid all acts, habits and usages that might injure in any way, directly or indirectly, the professional reputation of MESA or any of its physicians or other personnel.

(g) Nurse Practitioner shall provide services in accordance with the standards of medical practice of the medical staff of the hospitals, emergency or medical departments, health care facilities or other entities at which Nurse Practitioner is employed by MESA, and in accordance with the applicable standards of practice among nurse practitioners within the community in which such entities are located.

(h) Nurse Practitioner shall comply with applicable treatment protocols as may be established or modified from time to time by governmental entity, MESA or by the hospitals, health care facilities or other entities at which Nurse Practitioner is employed by MESA.

(i)  Nurse Practitioner shall comply with charting and documentation standards, as set forth in all applicable federal or state laws, regulations, rules or procedures and as may be established or modified by MESA from time to time.

(j)  Nurse Practitioner shall perform such other duties as shall be reasonably requested by MESA from time to time.

(k)  In consideration of the compensation and other benefits provided herein, Nurse Practitioner agrees to assign to MESA all reimbursement, payment or other compensation received from patients, third-party payors or other persons or entities, arising from services provided by Nurse Practitioner during the course of MESA's employment of Nurse Practitioner or otherwise arising from Nurse Practitioner's employment by MESA. Nurse Practitioner agrees that the sole reimbursement he or she shall receive for his or her employment with MESA shall be the compensation and other benefits described in Section 2, above and in Appendix A.

3.2     Exclusive Service.  During the term of this Agreement, Nurse Practitioner shall devote Nurse Practitioner's full, entire, and undivided professional time and attention as a nurse practitioner employee of MESA and shall not, without the prior written approval of MESA (which approval shall not be unreasonably withheld), practice as a nurse practitioner other than as an employee of MESA.  Additionally, Nurse Practitioner shall not practice as a nurse practitioner other than as an employee of MESA where such "outside" work in any way interferes with Nurse Practitioner's work for MESA.

3.3     MESA's Contracts Binding.  By Nurse Practitioner's execution of this Agreement, Nurse Practitioner expressly agrees that as consideration for the amounts paid to Nurse Practitioner hereunder, Nurse Practitioner is bound by all of the terms and provisions of MESA's Contracts with any hospitals, health care facilities or other entities, at which MESA provides services at any time during which Nurse Practitioner is employed by MESA, including, without limitation, all applicable restrictive covenants contained in such MESA Contracts.

3.4 Representations and Warranties of Nurse Practitioner.  Nurse Practitioner represents and warrants to MESA that with the exception of those disclosures listed in Appendix B, if any:

(a)  Nurse Practitioner currently has all necessary licenses, credentials, staff privileges, permits, registrations and continuing education requirements necessary to practice as a nurse practitioner under this Agreement at the hospitals, health care facilities or other entities identified in Appendix A and in the jurisdictions identified in Appendix A and will maintain the same at all times during the term of this Agreement.

(b)  Nurse Practitioner's current and past professional, state and/or federal registrations or authorizations to practice as a nurse practitioner are not and have never been restricted, suspended or revoked.

(c)  Nurse Practitioner has, and will maintain during the term of this Agreement, good standing with all federal, state and local agencies related to the services to be provided pursuant to this Agreement and all other third-party payors as required by MESA.

(d)  Nurse Practitioner has never been reprimanded, sanctioned or disciplined by any licensing board or state or local medical or other professional society.

(e) There has never been entered against Nurse Practitioner a final judgment in a malpractice action. No legal action that was based upon or otherwise included an allegation of malpractice by Nurse Practitioner has ever been settled by payment to the plaintiff. There have been no claims, demands, suits or actions threatened or pending against Nurse Practitioner for medical malpractice and Nurse Practitioner knows of no facts that would indicate a reasonable likelihood such claims, demands, suits or actions would be asserted or filed.

(f) Nurse Practitioner has never been denied appointment or reappointment to the medical staff of any hospital or other health care facility. Nurse Practitioner's medical staff membership or clinical privileges with any hospital, health care facility or other entity have never been suspended, curtailed or revoked, nor has Nurse Practitioner voluntarily relinquished such staff membership or clinical privileges while a charge of substandard quality of patient care was pending against him or her (regardless of the truth or falsity of the charge).

(g) Nurse Practitioner is not under or bound by, and will not during the term of this Agreement, be under or bound by any other agreement, contract, obligation, or covenant that would affect his or her ability to meet Nurse Practitioner's obligations under this Agreement. Nurse Practitioner will not breach any agreement, contract, obligation or covenant by executing this Agreement and performing in accordance herewith.

3.5     Limitations on Authority of Nurse Practitioner. Nurse Practitioner acknowledges and agrees that, without the prior express written consent from MESA, Nurse Practitioner shall have no apparent or implied authority to:

(a)     Pledge the credit of MESA or any of its other employees.

(b)     Bind MESA under any contract, agreement, note, mortgage or otherwise.

(c)     Release or discharge any debt due MESA unless MESA has received the full amount thereof.

(d)     Sell, mortgage, assign, transfer or otherwise dispose of any assets of MESA.

(e)     Individually contract with any patient or customer of MESA.

3.6     Compliance with Rules and Regulations. Nurse Practitioner agrees that he or she shall abide by and comply with policies, schedules, procedures, standards, rules and regulations promulgated by MESA, including, but not limited to, MESA's work and scheduling policies.

Nurse Practitioner agrees to abide by and be bound by all policies, standards, and regulations applicable to Nurse Practitioner and/or MESA (which are hereby incorporated into this Agreement) promulgated by any hospital, health care facility or other entity at which Nurse Practitioner is employed by MESA or promulgated by the medical staff of any such entity.

Nurse Practitioner further agrees to perform Nurse Practitioner's duties in accordance with the standards, rules and regulations of all third-party payors from which MESA obtains reimbursement for services rendered, or as otherwise requested by MESA.

In the event that Nurse Practitioner fails to comply with the policies, procedures, standards, resolutions, directives, laws, ordinances, rules and/or regulations contained or referred to in this Agreement, MESA may, in its discretion, undertake any of the following:

(a) Issue a formal reprimand to Nurse Practitioner.

(b) Require that Nurse Practitioner obtain treatment for an illness or condition that interferes with Nurse Practitioner's professional performance.

(c) Limit the scope of Nurse Practitioner's professional responsibilities to the extent that Nurse Practitioner's performance does not meet acceptable standards of practice.

(d) Restrict benefits and privileges of Nurse Practitioner accruing to Nurse Practitioner under the terms of this Agreement.

(e) Take such other and additional action that MESA in its discretion deems appropriate, up to and including termination of this Agreement.

## SECTION 4
## ADMINISTRATION

4.1     Custodial Responsibility.   Nurse Practitioner shall keep full, complete and accurate accounts, records or other documentation of all professional work and services performed by Nurse Practitioner or under Nurse Practitioner's supervision for MESA (collectively referred to as the "Professional Documents") in a timely fashion in accordance with such formats and guidelines established or adopted by MESA. Nurse Practitioner understands and agrees that his or her obligations hereunder with regard to the Professional Documents continue and survive the termination or end of this Agreement, for whatever reason, and Nurse Practitioner agrees to perform such obligations upon termination of this Agreement, to the satisfaction of MESA. Nurse Practitioner agrees to remain current with all applicable documentation and coding formats, requirements, guidelines and standards as they may change from time to time. All such Professional Documents are the exclusive property of MESA. Nurse Practitioner holds such Professional Documents in trust for MESA and shall promptly relinquish such Professional Documents to MESA on or before Nurse Practitioner's termination of employment under this Agreement or upon demand by MESA.

4.2     Fees, Collections and Billings.   MESA shall determine and may modify from time to time the amount to be charged for all services rendered by Nurse Practitioner or any other employee of MESA. MESA shall have exclusive authority to determine the fees, or a procedure for establishing the fees, to be charged to patients of Nurse Practitioner. MESA shall own and control all collections and billings arising pursuant to the rendering of services by Nurse Practitioner or any other employee of MESA. All fees and compensation received or realized by MESA as a result of the rendering of services by Nurse Practitioner and other employees of MESA shall belong to, be paid to and be delivered to MESA.

4.3     Participation with Payors.   Nurse Practitioner shall participate in all reimbursement and payment agreements entered into by MESA. Nurse Practitioner shall take such actions and execute such documents and instruments as may be necessary to enable MESA to receive reimbursement and payments under such agreements.

4.4 <u>Indemnification</u>. Nurse Practitioner agrees to indemnify and hold harmless MESA and its shareholders, directors, officers and employees (other than Nurse Practitioner) from any and all claims, expenses, judgments, and costs caused by or resulting from any wrongful act or omission by Nurse Practitioner, where Nurse Practitioner has been advised to correct such wrongful act or omission by MESA, by any third-party payor or by any hospital, health facility or other entity at which Nurse Practitioner provides or has provided services for or on behalf of MESA, and Nurse Practitioner fails to do so. Nurse Practitioner further agrees to indemnify and hold harmless MESA and its shareholders, directors, officers and employees (other than Nurse Practitioner) from any and all claims, expenses, judgments, and costs caused by or resulting from Nurse Practitioner's breach of any representation or warranty contained in this Agreement.

4.5 <u>Administration and Employment of Nurse Practitioners and Personnel</u>. MESA shall have full and complete authority and responsibility with respect to the administration of the business of MESA and the employment of nurse practitioners and all other personnel for the operation of MESA.

## SECTION 5
## TERMINATION

5.1 <u>Automatic Termination</u>. The Parties agree that this Agreement and the employment of Nurse Practitioner with MESA shall terminate automatically upon the occurrence of any of the following events:

(a) Upon Nurse Practitioner's disqualification to practice as a nurse practitioner in the jurisdiction(s) in which Nurse Practitioner has been assigned to work for MESA.

(b) Upon the death of Nurse Practitioner.

(c) Upon passage of the period of time specified in a written notice of termination without cause provided in accordance with section 5.2, below.

(d) Immediately, upon delivery of written notice of termination for cause in accordance with Section 5.5(a), below, or upon such other date as is specified in said notice of termination.

(e) Upon passage of such period of time as is specified in a written notice of termination for cause provided in accordance with Section 5.5(b) or 5.5(c), below.

(f) Upon passage of Nurse Practitioner's current twelve-month term of employment, provided that at least one hundred and twenty (120) days prior to expiration of Nurse Practitioner's current twelve-month period of employment (the "Notice Period"), either Nurse Practitioner or MESA provides written notice to the other that this Agreement will not be renewed for an additional term.

5.2 <u>Termination without Cause</u>. Either Party may terminate this Agreement, without cause by providing to the other Party at least one hundred and twenty (120) days written notice (the "Notice Period").

5.3 <u>Reduction of Notice Period</u>. Nurse Practitioner may reduce the Notice Period required by Section 5.1 (f) and Section 5.2 of this Agreement at the cost of five thousand dollars ($5,000.00) per thirty (30) day reduction, up to a maximum reduction of ninety (90) days.

5.4     Failure to Honor Notice Period.  If Nurse Practitioner fails to honor the Notice Period required by Section 5.1 (f) or Section 5.2 of this Agreement, whichever is applicable, and does not exercise the right to reduce the Notice Period as provided for in Section 5.3 of this Agreement, Nurse Practitioner will pay to MESA two hundred dollars ($200.00) for each day of the Notice Period that is not honored.

5.5  Termination for Cause.

     (a)  Immediate Termination.  MESA may, in its sole discretion, terminate this Agreement at any time "for cause" with immediate effect upon delivering written notice to Nurse Practitioner for the following:

        (1)  Nurse Practitioner's conduct involving embezzlement, theft, larceny, material fraud, dishonesty or moral turpitude.

        (2)  Nurse Practitioner's conviction of, or entrance of a plea of guilty, no contest and/or *nolo contendere* to a felony or other crime that has or may have, in MESA's sole discretion, a material adverse effect upon Nurse Practitioner's ability to fulfill his or her obligations under this Agreement and/or upon MESA's reputation, its ability to perform its contractual obligations or otherwise upon its business operations.

        (3)  Nurse Practitioner's violation of any federal, state or local statute, rule, regulation or ordinance relating to practice as a Nurse Practitioner or otherwise relating to the practice of medicine.

        (4)  Nurse Practitioner's loss of, suspension of, restriction of, or failure to obtain medical staff membership and/or clinical privileges at any hospital, health care facility or other entity for which MESA provides services.

        (5)  Nurse Practitioner's use of alcohol during working hours or use of alcohol during non-working hours that interferes with Nurse Practitioner's ability to perform his or her obligations under this Agreement.

        (6)  Nurse Practitioner's illegal use of drugs and/or controlled substances.

        (7)  Nurse Practitioner's violation of MESA's drug and/or alcohol policies.

        (8)  Nurse Practitioner's intentional violation of MESA's policies, rules, procedures or instructions.

        (9)  Nurse Practitioner's intentional violation of applicable policies, rules, procedures or instructions of any hospital, health care facility or other entity for which MESA provides services.

        (10)  Nurse Practitioner's failure to qualify for or disqualification from participation in any private or governmental health insurance plan, health benefits plan or other plan or program from which MESA receives reimbursement for its services, or any restriction or limitation of Nurse

Practitioner's participation in such plan or program that aversely affects payment to MESA for its services.

(11) Any restrictions or limitations imposed by any governmental authority with respect to practice by Nurse Practitioner to the extent that such restrictions/limitations prohibit, limit or otherwise interfere with Nurse Practitioner's performance of his or her obligations under this Agreement.

(12) Unprofessional or unethical conduct by Nurse Practitioner or any finding of unprofessional or unethical conduct by any board, institution, organization or professional society, where such conduct or finding of such conduct has a material adverse effect upon Nurse Practitioner's ability to fulfill his or her obligations under this Agreement and/or upon MESA's reputation, its ability to perform its contractual obligations or otherwise upon its business operations.

(13) Nurse Practitioner's assignment, or attempted assignment, of Nurse Practitioner's duties or obligations under this Agreement, or other violation of Section 8.5 of this Agreement.

(b) Termination for Substandard Performance. MESA may, in its sole discretion, terminate Nurse Practitioner for substandard performance in accordance with MESA's nurse practitioner performance policy by providing at least thirty (30) days written notice of termination for substandard performance.

(c) Termination for Breach. For any material breach of this Agreement not listed above, MESA or Nurse Practitioner may terminate this Agreement in accordance with the following procedure:

(1) Written notice to the breaching Party by the non-breaching Party, describing the breach and specifying the necessary corrective action.

(2) Upon receipt of notice, the breaching Party shall have thirty (30) days in which to cure the breach.

(3) If the breaching Party fails to cure the breach within thirty (30) days, the non-breaching Party may terminate this Agreement by providing at least thirty (30) days written notice of termination for breach of this Agreement.

5.6 Disability. MESA may, in its sole discretion, terminate this Agreement by providing written notice, upon Nurse Practitioner's disability. For purposes of this Agreement, disability shall be defined as the Nurse Practitioner's inability, as the result of a physical or mental impairment, to perform his or her duties, even with reasonable accommodations, for a period of six (6) consecutive months.

5.7    Effect of Termination.

(a) Compensation.  Nurse Practitioner shall be entitled to compensation earned through the date of termination, less any applicable deductions under law or as provided in this Agreement.

(b) Non-Vested Retirement Plan Contributions.  In the event that retirement plan contributions allocated to Nurse Practitioner, have not vested at the time of termination, Nurse Practitioner shall receive such contributions as compensation, less applicable deductions.

(c) Continuing Obligations.  Nurse Practitioner and MESA shall continue to otherwise be bound by the provisions of this Agreement, as applicable, including, without limitation, the confidentiality requirements contained in Section 6, below.

(d) Medical Staff Membership and Privileges.  Nurse Practitioner shall resign and surrender Nurse Practitioner's medical staff membership and clinical privileges at each hospital, health care facility or other entity at which he or she has been assigned to work by MESA, as required under the terms of contract between MESA and such hospital, health care facility or other entity or as otherwise requested by such hospital, health care facility or other entity.

## SECTION 6
## CONFIDENTIALITY

6.1    Confidential Information.  Nurse Practitioner acknowledges and stipulates that during the term of this Agreement, Nurse Practitioner will be placed in a position by MESA to become acquainted with various aspects of MESA's "Confidential Information" (as defined below). Nurse Practitioner further acknowledges and stipulates that the use or disclosure of such Confidential Information by Nurse Practitioner except as expressly authorized by MESA is prohibited and would seriously damage MESA.  In addition to being given access to such Confidential Information, Nurse Practitioner also acknowledges and stipulates that he or she will receive material benefits as the result of this Agreement, including compensation and experience.  Therefore, Nurse Practitioner agrees as follows:

(a) During the term of this Agreement and thereafter, Nurse Practitioner agrees that he or she shall not, without the prior written consent of MESA, directly or indirectly:

(1)    Misappropriate any Confidential Information.

(2)    Use any Confidential Information for the purpose of competing with MESA.

(3)    Divulge, disclose, furnish or make accessible to any third party or copy, take or use in any manner all or any part of any Confidential Information.

(4)    Aid anyone else in divulging, disclosing, furnishing or making accessible to any third party all or any part of any Confidential Information.

(5) Take any action which might reasonably or foreseeably be expected to compromise the confidentiality or proprietary nature of any Confidential Information.

(b) Nurse Practitioner agrees not to make use of such Confidential Information except on MESA's behalf, whether or not such information is produced by Nurse Practitioner's own efforts. Nurse Practitioner further understands and agrees that his or her confidentiality obligations under this Section 6.1 shall continue both during his or her employment with MESA and after the termination of this Agreement until such Confidential Information becomes generally available to the public through legitimate means.

(c) "Confidential Information" includes (1) all contracts between MESA and any person or entity and information related to such contracts; (2) all financial information concerning MESA, including but not limited to, financial statements, compensation paid to employees and/or shareholders, billing data and projections, cost analyses and similar information; (3) all plans and projections for business opportunities concerning new or developing business of MESA; (4) all information concerning patients treated or serviced by MESA, including but not limited to, patient lists, patient records, patient histories, billing histories, insurance data and other similar patient information; (5) all information relating to MESA's fee schedule, marketing costs, service performance, financial data, operating results, and personnel matters; (6) all internal publications and memoranda of MESA; (7) any other confidential information, designs, patents, processes, ideas and trade secrets; or (8) any of the information described in (1)-(7) that MESA obtains from another party or entity and that MESA treats or designates as confidential, whether or not such information is owned or was developed by MESA.

(d) Nurse Practitioner further agrees that upon termination of this Agreement for any reason, Nurse Practitioner shall deliver to MESA (without retaining copies) all of MESA's property in Nurse Practitioner's possession and control, including but not limited to any MESA computer, printer, cellular telephone, pager or other equipment assigned to or used by Nurse Practitioner, any documents, patient records, patient lists, marketing data, written material, information, products, devices, and other property belonging to MESA, as well as all documents, data, and other materials of any kind that constitute or contain any Confidential Information, regardless of how stored or maintained, including all originals, copies, facsimiles and compilations and all information stored or maintained on computer, tapes, discs, or any other form of technology.

## SECTION 7
## GENERAL PROVISIONS

7.1 Remedies. The Parties agree that any breach by Nurse Practitioner of Section 6 of this Agreement would cause irreparable damage to MESA, for which there is no adequate remedy at law. Therefore, Nurse Practitioner agrees that MESA shall be entitled to preliminary and permanent injunctions, without bond, restraining Nurse Practitioner from breaching or continuing any breach of Section 6. The existence of any claim or cause of action on the part of Nurse Practitioner against MESA, whether arising from this Agreement or otherwise, shall not constitute a defense to the granting or enforcement of this injunctive relief. Nothing

herein shall be construed as prohibiting the Parties from pursuing other available remedies for any breach or threat of breach.

7.2    <u>Severability</u>. The provisions of this Agreement are deemed by the Parties to be severable, and the invalidity or unenforceability of any one or more of the provisions of this Agreement shall not affect the validity or enforceability of any other provision.

7.3    <u>Interpretation, Enforcement and Venue</u>. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky. MESA and Nurse Practitioner hereby agree that litigation to enforce or interpret this Agreement or any provisions hereunder shall be commenced in a court of competent jurisdiction in Fayette County, Kentucky. Any such litigation, commenced by a Party in a court outside Fayette County, Kentucky, shall be subject to dismissal, stay or transfer to a court of competent jurisdiction within Fayette County, Kentucky, in the sole discretion of the other Party. The Parties hereby waive all objections to adjudication of any legal action by a court within Fayette County, Kentucky, based upon improper venue or other doctrine of *forum non conveniens*.

7.4    <u>Professional Liability Insurance</u>. During the term of this Agreement, MESA will provide, at MESA's expense, professional liability insurance coverage with respect to professional services provided under this Agreement by Nurse Practitioner which policy will cover both MESA ("Named Insured") and MESA's contracted or employed health care providers ("Additional Named Insureds"). MESA will, during the term of the Agreement and thereafter for the period of the applicable statute of limitations for personal injury, maintain continuous coverage with the same carrier, or will purchase, at MESA's expense, either (1) an Extended Reporting Endorsement (aka "tail coverage") which covers both Named Insured and Additional Named Insureds with respect to acts and omissions that occur during the term of the Agreement; or (2) Prior Acts coverage from a new insurer which covers both Named Insured and Additional Named Insureds, with a retroactive date on or prior to the effective date of the Agreement.

7.5    <u>Assignment and Benefit Accrual</u>. Nurse Practitioner may not assign any of Nurse Practitioner's rights or delegate any of Nurse Practitioner's duties or obligations under this Agreement.

MESA shall have the right to assign or transfer its rights, interest and benefits under this Agreement to any successor entity formed as a result of a merger or reorganization, without the prior written consent of Nurse Practitioner. However, MESA shall provide Nurse Practitioner with written notice of such transfer or assignment.

The rights and obligations of the Parties under this Agreement shall inure to the benefit of and shall be binding, as applicable, upon the successors, assigns, affiliates and heirs of the Parties hereto.

7.6    <u>Contract Modifications for Prospective Legal Events</u>. In the event any state or federal laws or regulations, now existing or enacted or promulgated after the Effective Date of this Agreement, are interpreted by judicial decision, a regulatory agency or legal counsel to a Party hereto in such a manner as to indicate that this Agreement or any provision(s) contained herein may be in violation of such laws or regulations, MESA and Nurse Practitioner shall amend this Agreement as necessary. To the maximum extent possible, any such amendment shall preserve the current Agreement between MESA and Nurse Practitioner as stated herein.

7.7     Confidentiality. The Parties acknowledge and agree that this Agreement is confidential. No Party shall disclose the terms of this Agreement without the written consent of the other Party, or as required by law or regulation. Provided, however, that either Party may disclose the terms of this Agreement to the Party's legal counsel or accountant.

7.8     Construction. This Agreement or any part hereof shall not be construed against or in favor of any Party due to the fact that said Agreement or part of said Agreement was drafted by any Party.

7.9     Further Action. The Parties hereto shall execute and deliver all documents, provide all information and take or forbear from all such action as may be necessary or appropriate to achieve the purposes of this Agreement.

7.10     No Third-Party Beneficiary. Nothing herein shall be construed to be to the benefit of any third party, nor is it intended that any provision shall be for the benefit of any third party.

7.11     Titles and Captions. All section titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the context or affect the interpretation of this Agreement.

7.12     Entire Understanding and Amendment. This Agreement sets forth the entire understanding between the Parties with respect to Nurse Practitioner's employment by MESA and supersedes and replaces in their entirety any and all prior agreements, oral or written, between the Parties hereto. This Agreement may only be modified or amended by written instrument executed by both Parties.

7.13     Rights and Waiver. All rights, powers and remedies granted to either Party by any particular term of this Agreement are in addition to, and not in limitation of, any rights, powers or remedies that either has under any other term of this Agreement, at common law, in equity, by statute or otherwise. All such rights, powers and remedies may be exercised separately or concurrently, in such order and as often as may be deemed expedient by either Party. No delay or omission by either Party to exercise any right, power or remedy shall impair such right, power or remedy or be construed to be a waiver of, or an acquiescence to, any breach or default. A waiver by either Party of any breach or default hereunder shall not constitute a waiver of any subsequent breach or default.

7.14     Separate Counsel. Both MESA and Nurse Practitioner are aware that it is important for each to seek the advice of separate counsel with respect to this Agreement, and both Parties each acknowledge that they have had adequate opportunity to do so. In executing this Agreement, neither MESA nor Nurse Practitioner is relying upon advice, opinions or representations by or from counsel representing the other Party.

7.15     Notices. Any notices permitted or required under this Agreement shall be deemed given upon the date of personal delivery or forty-eight (48) hours after deposit in the United States mail, postage fully prepaid, return receipt requested, addressed to MESA at:

**Marshall Emergency Services Associates, PLLC**
**1792 Alysheba Way**
**Suite 150**
**Lexington, Kentucky 40509**

and addressed to Nurse Practitioner at:

**Lori Wagner-Bromagen, APRN**
**1890 Star Shoot Parkway, Suite 170, PMB 348**
**Lexington, Kentucky 40509**

or at any other address as any Party may, from time to time, designate by notice given in compliance with this Section.

7.16    Execution.  This Agreement may be executed in separate exact counter-parts, and when so executed by each Party, shall be deemed but one Agreement and fully effective in accordance with the terms therein.

# [SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** the Parties hereto have executed this NURSE PRACTITIONER EMPLOYMENT AGREEMENT between Marshall Emergency Services Associates, PLLC and Lori Wagner-Bromagen, APRN on the date indicated next to their respective signatures.

MARSHALL EMERGENCY
SERVICES ASSOCIATES, PLLC

By: _____
    Lawrence Kraska/Date
    CEO

NURSE PRACTITIONER

_____
Lori Wagner-Bromagen, APRN/Date

*1 June 2012*

# MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
## APPENDIX B
### TO
### NURSE PRACTITIONER EMPLOYMENT AGREEMENT
### BETWEEN
### MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
### AND

### Lori Wagner-Bromagen, APRN
### (Nurse Practitioner Name)

**DATE AGREEMENT EXECUTED:** _1 June 2012_
(By both Nurse Practitioner and MESA)

**EFFECTIVE DATE:** **June 1, 2012**
(As stated in Section 1.1 of the Agreement)

Note:     This Appendix B of the Nurse Practitioner Employment Agreement between Marshall Emergency Services Associates, PLLC and the above named Nurse Practitioner is hereby incorporated into and made part of said Nurse Practitioner Employment Agreement ("Agreement").

The following is a complete list of exceptions to Representations and Warranties of Nurse Practitioner, stated in Section 3.4 of the Agreement:

**No Exceptions:** _____ (Nurse Practitioner's Initials)
**or**
**Describe in Detail:**

_____
Lori Wagner-Bromagen, APRN/Date

# MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
## APPENDIX A (KENTUCKY)
### TO
### NURSE PRACTITIONER EMPLOYMENT AGREEMENT
### BETWEEN
### MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
### AND

### Lori Wagner-Bromagen, APRN
#### (Nurse Practitioner Name)

**DATE AGREEMENT EXECUTED:**    1 June 2012
(By both Nurse Practitioner and MESA)

**EFFECTIVE DATE:**      **June 1, 2012**
(As stated in Section 1.1 of the Agreement)

**Note:**      **This Appendix A of the Nurse Practitioner Employment Agreement between Marshall Emergency Services Associates, PLLC and the above named Nurse Practitioner is hereby incorporated into and made part of said Nurse Practitioner Employment Agreement ("Agreement").**

**Provided, however, that to the extent any provision(s) contained in this Appendix A, modifies, contradicts or is otherwise inconsistent with any terms contained in the Agreement, the terms of this Appendix A shall govern.**

**To the extent not modified by, contradicted by or inconsistent with this Appendix A, however, the Agreement shall remain in full force and effect.**

### REGISTRATION/DESIGNATION
### ADVANCED REGISTERED NURSE PRACTITIONER
### (KENTUCKY)

1. <u>Registration</u>. Nurse Practitioner is registered and designated to practice as an Advanced Registered Nurse Practitioner ("ARNP") by the Commonwealth of Kentucky, in accordance with Section 314.042 if the Kentucky Revised Statutes and its implementing regulation at 201 KAR:20:56, on the following date(s) for the following ARNP Specialty Type(s):

---

ARNP
Initials

MESA
Initials

| Date | Specialty |
|------|-----------|
|      | ACUTE CARE NP |
|      | ADULT NP |

(Please attach copy of Kentucky ARNP Registration)

2. <u>Licensure</u>. Nurse Practitioner holds a current active registered nurse license issued by the Kentucky Board of Nursing. (Please attach copy of Kentucky RN License)

3. <u>Certification</u>. Nurse Practitioner has the following current National Certification(s) awarded by organization(s) or agency(cies) approved by the Kentucky Board of Nursing:

| Certifying Body | Specialty | Certification Number | Expiration Date |
|-----------------|-----------|----------------------|-----------------|
| ANCC | ADULT NP |  |  |
| ANCC | ACUTE CARE NP |  |  |

### PRESCRIPTIVE AUTHORITY
(To be Completed If Nurse Practitioner Has Prescriptive Authority in Kentucky)

4. Nurse Practitioner is fully qualified, under KRS 314.042 and KRS 314.011, to dispense nonscheduled legend drugs, as defined in KRS 217.905.

5. Nurse Practitioner has entered into a Collaborative Practice Agreement, pursuant to KRS 314.042(8), with the following physician, licensed to practice medicine in the Commonwealth of Kentucky:

      Name of Physician: _____

  (Please attach copy of Collaborative Practice Agreement)

6. Nurse Practitioner is permitted to prescribe all nonscheduled legend drugs pursuant to Nurse Practitioner's scope of practice as defined in 201 KAR 217.905, in the subspecialty of ADULT + ACUTE CARE.

7. Nurse Practitioner shall notify MESA immediately if said Collaborative Practice Agreement is terminated or if Nurse Practitioner's authority to prescribe nonscheduled drugs is otherwise limited or curtailed.



ARNP
Initials

MESA
Initials

## TERMS OF EMPLOYMENT

**MINIMUM SHIFT HOURS PER MONTH:  PRN**


**HOSPITAL(S):**

**Bluegrass Community Hospital**
**Bourbon Community Hospital**
**Ephraim McDowell Regional Medical Center**
**Georgetown Community Hospital**
**The James B. Haggin Memorial Hospital**
**Spring View Hospital**
**UK – Good Samaritan Hospital**

**COMPENSATION:  $55.00/hour**


**ADDITIONAL REQUIRED LICENSURE/CREDENTIALS/STAFF PRIVILGES,
CERTIFICATIONS, ETC.:  None**


**ADDITIONAL REQUIREMENTS/COMMENTS:  None**


# [SIGNATURE PAGE FOLLOWS]

ARNP
Initials

MESA
Initials

**IN WITNESS WHEREOF,** the Parties hereto have executed this APPENDIX A to NURSE PRACTITIONER EMPLOYMENT AGREEMENT between Marshall Emergency Services Associates, PLLC and Lori Wagner-Bromagen, APRN on the date indicated next to their respective signatures.

MARSHALL EMERGENCY SERVICES
ASSOCIATES, PLLC

By: _____
    Lawrence Kraska/Date
    CEO

NURSE PRACTITIONER

Lori Wagner-Bromagen, APRN/Date   1 June 2012

# MESA MEDICAL GROUP, PLLC
## APPENDIX A (KENTUCKY)
## TO
## NURSE PRACTITIONER EMPLOYMENT AGREEMENT
## BETWEEN
## MESA MEDICAL GROUP, PLLC
## AND

### Lori Wagner-Bromagen, APRN
### (Nurse Practitioner Name)

**DATE AGREEMENT EXECUTED:** _____
(By both Nurse Practitioner and MESA)

**EFFECTIVE DATE:** April 1, 2013
(As stated in Section 1.1 of the Agreement)

Note:    This Appendix A of the Nurse Practitioner Employment Agreement between MESA Medical Group, PLLC and the above named Nurse Practitioner is hereby incorporated into and made part of said Nurse Practitioner Employment Agreement ("Agreement").

Provided, however, that to the extent any provision(s) contained in this Appendix A, modifies, contradicts or is otherwise inconsistent with any terms contained in the Agreement, the terms of this Appendix A shall govern.

To the extent not modified by, contradicted by or inconsistent with this Appendix A, however, the Agreement shall remain in full force and effect.

### REGISTRATION/DESIGNATION
### ADVANCED PRACTICE REGISTERED NURSE
### (KENTUCKY)

1. Registration.  Nurse Practitioner is registered and designated to practice as an Advanced Practice Registered Nurse ("APRN") by the Commonwealth of Kentucky, in accordance with Section 314.042 if the Kentucky Revised Statutes and its implementing regulation at 201 KAR:20:56, on the following date(s) for the following APRN Specialty Type(s):

| Date | Specialty |
|------|-----------|
|      |           |

APRN
Initials

| KY | RN |  |  |
|----|-----|--|--|
| KY | APRN |  |  |

(Please attach copy of Kentucky APRN Registration)

2. <u>Licensure</u>. Nurse Practitioner holds a current active registered nurse license issued by the Kentucky Board of Nursing. (Please attach copy of Kentucky RN License)

3. <u>Certification</u>. Nurse Practitioner has the following current National Certification(s) awarded by organization(s) or agency(cies) approved by the Kentucky Board of Nursing:

| Certifying Body | Specialty | Certification Number | Expiration Date |
|-----------------|-----------|----------------------|-----------------|
| ANCC | ACUTE CARE | See a | 2013 |
| ANCC | ADULT |  | 2015 |

## PRESCRIPTIVE AUTHORITY
### (To be Completed If Nurse Practitioner Has Prescriptive Authority in Kentucky)

4. Nurse Practitioner is fully qualified, under KRS 314.042 and KRS 314.011, to dispense nonscheduled legend drugs, as defined in KRS 217.905.

5. Nurse Practitioner has entered into a Collaborative Practice Agreement, pursuant to KRS 314.042(8), with the following physician, licensed to practice medicine in the Commonwealth of Kentucky:

      Name of Physician: _____

    (Please attach copy of Collaborative Practice Agreement)

6. Nurse Practitioner is permitted to prescribe all nonscheduled legend drugs pursuant to Nurse Practitioner's scope of practice as defined in 201 KAR 217.905, in the subspecialty of _Adult & Acute Care_.

7. Nurse Practitioner shall notify MESA immediately if said Collaborative Practice Agreement is terminated or if Nurse Practitioner's authority to prescribe nonscheduled drugs is otherwise limited or curtailed.



APRN
Initials

MESA
Initials

# TERMS OF EMPLOYMENT

**MINIMUM SHIFT HOURS PER MONTH:  PRN**

**HOSPITAL(S):**

**UK – Good Samaritan Hospital**

**COMPENSATION:  $62.00/hour**

**ADDITIONAL REQUIRED LICENSURE/CREDENTIALS/STAFF PRIVILGES, CERTIFICATIONS, ETC.:  None**

**ADDITIONAL REQUIREMENTS/COMMENTS:  None**

# [SIGNATURE PAGE FOLLOWS]

APRN
Initials

MESA
Initials

**IN WITNESS WHEREOF,** the Parties hereto have executed this APPENDIX A to NURSE PRACTITIONER EMPLOYMENT AGREEMENT between MESA Medical Group, PLLC and Lori Wagner-Bromagen, APRN on the date indicated next to their respective signatures.

MESA MEDICAL GROUP, PLLC

By: _____
    Lawrence Kraska/Date
    CEO

NURSE PRACTITIONER

_____ 5-6-13
Lori Wagner-Bromagen, APRN/Date

## MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
### APPENDIX A (KENTUCKY)
### TO
### NURSE PRACTITIONER EMPLOYMENT AGREEMENT
### BETWEEN
### MARSHALL EMERGENCY SERVICES ASSOCIATES, PLLC
### AND

**Lori Wagner-Bromagen, APRN**
(Nurse Practitioner Name)

**DATE AGREEMENT EXECUTED:**    9\7\12
(By both Nurse Practitioner and MESA)

**EFFECTIVE DATE:**    August 1, 2012
(As stated in Section 1.1 of the Agreement)

Note:    This Appendix A of the Nurse Practitioner Employment Agreement between Marshall Emergency Services Associates, PLLC and the above named Nurse Practitioner is hereby incorporated into and made part of said Nurse Practitioner Employment Agreement ("Agreement").

Provided, however, that to the extent any provision(s) contained in this Appendix A, modifies, contradicts or is otherwise inconsistent with any terms contained in the Agreement, the terms of this Appendix A shall govern.

To the extent not modified by, contradicted by or inconsistent with this Appendix A, however, the Agreement shall remain in full force and effect.

### REGISTRATION/DESIGNATION
### ADVANCED REGISTERED NURSE PRACTITIONER
### (KENTUCKY)

1. Registration.  Nurse Practitioner is registered and designated to practice as an Advanced Registered Nurse Practitioner ("ARNP") by the Commonwealth of Kentucky, in accordance with Section 314.042 if the Kentucky Revised Statutes and its implementing regulation at 201 KAR:20:56, on the following date(s) for the following ARNP Specialty Type(s):

ARNP
Initials

MESA
Initials

Page 1 of 4

| Date | Specialty |
|------|-----------|
|      | ACUTE CARE NP |
|      | ADULT NP |

(Please attach copy of Kentucky ARNP Registration)

2. <u>Licensure.</u> Nurse Practitioner holds a current active registered nurse license issued by the Kentucky Board of Nursing. (Please attach copy of Kentucky RN License)

3. <u>Certification.</u> Nurse Practitioner has the following current National Certification(s) awarded by organization(s) or agency(cies) approved by the Kentucky Board of Nursing:

| Certifying Body | Specialty | Certification Number | Expiration Date |
|-----------------|-----------|----------------------|-----------------|
| AACP | ACUTE |  |  |
|  | ADULT |  |  |

## PRESCRIPTIVE AUTHORITY
(To be Completed If Nurse Practitioner Has Prescriptive Authority in Kentucky)

4. Nurse Practitioner is fully qualified, under KRS 314.042 and KRS 314.011, to dispense nonscheduled legend drugs, as defined in KRS 217.905.

5. Nurse Practitioner has entered into a Collaborative Practice Agreement, pursuant to KRS 314.042(8), with the following physician, licensed to practice medicine in the Commonwealth of Kentucky:

   Name of Physician: _____

   (Please attach copy of Collaborative Practice Agreement)

6. Nurse Practitioner is permitted to prescribe all nonscheduled legend drugs pursuant to Nurse Practitioner's scope of practice as defined in 201 KAR 217.905, in the subspecialty of _ACUTE ADULT_ .

7. Nurse Practitioner shall notify MESA immediately if said Collaborative Practice Agreement is terminated or if Nurse Practitioner's authority to prescribe nonscheduled drugs is otherwise limited or curtailed.

ARNP CML2
Initials

MESA
Initials

## TERMS OF EMPLOYMENT

**MINIMUM SHIFT HOURS PER MONTH: PRN**

**HOSPITAL(S):**

Bluegrass Community Hospital
Bourbon Community Hospital
Ephraim McDowell Regional Medical Center
Georgetown Community Hospital
The James B. Haggin Memorial Hospital
Spring View Hospital
UK – Good Samaritan Hospital

**COMPENSATION: $60.00/hour**

**ADDITIONAL REQUIRED LICENSURE/CREDENTIALS/STAFF PRIVILGES, CERTIFICATIONS, ETC.: None**

**ADDITIONAL REQUIREMENTS/COMMENTS: None**

# [SIGNATURE PAGE FOLLOWS]

ARNP
Initials

MESA
Initials

IN WITNESS WHEREOF, the Parties hereto have executed this APPENDIX A to NURSE PRACTITIONER EMPLOYMENT AGREEMENT between Marshall Emergency Services Associates, PLLC and Lori Wagner-Bromagen, APRN on the date indicated next to their respective signatures.

MARSHALL EMERGENCY SERVICES
ASSOCIATES, PLLC

By: _____  9-7-12
Lawrence Kraska/Date
CEO

NURSE PRACTITIONER


_____  9-7-12
Lori Wagner-Bromagen, APRN/Date